IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| ANGELA ROLANDO and TONYA ROLANDO; CHASE WEINHANDL and BENJAMIN MILANO; SUSAN HAWTHORNE and ADEL JOHNSON; and SHAUNA GOUBEAUX and NICOLE GOUBEAUX,<br><br>        Plaintiffs,<br><br>   v.<br><br>TIM FOX in his official capacity as Attorney General of the State of Montana; MICHAEL KADAS, in his official capacity as the Director of the Montana Department of Revenue; and FAYE McWILLIAMS, in her official capacity as Clerk of Court of Cascade County,<br><br>        Defendants. | CV-14-40-GF-BMM<br><br>**ORDER** |

Plaintiffs challenge the Montana laws that ban the marriage of same-sex couples and ban the recognition of valid marriages of same-sex couples in other jurisdictions.

## BACKGROUND

Montana voters amended the Montana Constitution in 2004 to ban same-sex marriage. The Montana Constitution provides that "[o]nly a marriage between one man and one woman shall be valid or recognized as a marriage in this state." Mont. Const. Art. XIII, § 7. Montana statutory law also prohibits same-sex marriage. Montana Code Annotated section 40-1-401(1)(d) prohibits "marriage between persons of the same sex." Similarly, Montana Code Annotated section 40-1-103 defines marriage as "a personal relationship between a man and a woman arising out of a civil contract to which the consent of the parties is essential."

Previous litigation in the courts of the State of Montana has highlighted the multitude of benefits and responsibilities that arise from a valid civil marriage contract. *See Donaldson v. Montana*, 292 P.3d 364 (Mont. 2012). These benefits include tax preferences that reflect society's desire for the families of married couples to succeed financially. *See, e.g.*, Mont. Code Ann. § 19-17-405 (survivorship benefits for surviving spouses); Mont. Code Ann. § 33-20-1402 (spouse qualifies as dependent under life insurance); Mont. Code Ann. § 39-51-2205 (surviving spouse eligible to receive payments of accrued unemployment insurance benefits); Mont. Code Ann. § 39-71-723 (surviving spouse eligible to receive payment of workers' compensation benefits); Mont. Code Ann. § 72-2-112 (providing first priority to surviving spouse under intestate secession); and Mont.

Code Ann. § 15-30-2114 (providing exemption for taxpayer's spouse under state tax code). These responsibilities reflect society's recognition that married couples stand in the best position to make life and death decisions regarding the well-being of their family. *See, e.g.*, Mont. Code Ann. § 2-18-601 (allowing leave time for state employees to care for sick spouses); Mont. Code Ann. § 50-9-106 (authorizing spouse to consent to, or withhold consent of, medical treatment); and Mont. Code Ann. § 15-30-2366 (providing tax credit for qualified elderly care expenses for care of taxpayer's spouse).

Plaintiffs Angela Rolando and Tonya Rolando, a same-sex couple, live in Great Falls, Montana. (Doc. 1 at 6). The couple attempted to obtain a marriage license at the Cascade County Clerk of Court's office on May 19, 2014. The Cascade County Clerk of Court's office denied the Rolandos a marriage license because Montana law prohibits the marriage of same-sex couples. (Doc. 36 at 1).

Plaintiffs Chase Weinhandl and Benjamin Milano, Susan Hawthorne and Adel Johnson, and Shauna Goubeaux and Nicole Goubeaux are same-sex couples who reside in Montana. Each couple, while living in Montana, traveled outside Montana to marry. The couples legally married under the laws of Hawaii, Washington, and Iowa, respectively. (Doc. 36 at 1-2). The State of Montana refuses to recognize these marriages of same-sex partners.

Plaintiffs initially asked the Court to declare that Montana laws that prohibit same-sex marriage violate Plaintiffs' right to equal protection of the laws enshrined in the United States Constitution. Plaintiffs alleged that the Montana laws violated their right to equal protection by discriminating against them on the basis of both sexual orientation and on the basis of gender. Plaintiffs further requested that this Court declare that Montana laws that ban same-sex marriage violate Plaintiffs' fundamental right to marry. After Plaintiffs filed their complaint, the Ninth Circuit determined that laws that banned same-sex marriage in Idaho and Nevada violated the constitutional right of same-sex couples to equal protection of the laws. *Latta v. Otter*, ___ F.3d ____, 2014 WL 4977682 (9th Cir. 2014).

Plaintiffs now have filed a motion for summary judgment on their equal protection claim. (Doc. 35). Plaintiffs argue that the State of Montana has discriminated against them on the basis of sexual orientation. The Court would not need to reach Plaintiffs' fundamental right to marry claim, or decide whether Montana has discriminated against Plaintiffs on the basis of gender, if it determines that Montana laws that ban same-sex marriage violate Plaintiffs' right to equal protection of the laws.

## STANDARD OF REVIEW

A party is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). Material facts could affect the outcome of a case. Factual disputes that are irrelevant or unnecessary to the outcome of the case will not be counted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

The Court first must assess whether it possesses jurisdiction to hear Plantiffs' challenges.

### A. *Baker v. Nelson*

Defendants argue that *Baker v. Nelson*, 409 U.S. 810 (1972), a 1972 Supreme Court decision, precludes this Court from considering Plaintiffs' claims. The Minnesota Supreme Court earlier had rejected due process and equal protection challenges to a state law that prohibited same-sex marriage. *Baker v. Nelson*, 191 N.W.2d 185 (Minn. 1971). The plaintiffs sought review from the United States Supreme Court. The Court summarily dismissed the petition "for want of a substantial federal question." *Baker*, 409 U.S. at 810.

A federal court lacks jurisdiction to hear a claim that fails to present a substantial federal question. *Hicks v. Miranda*, 422 U.S. 332, 343-44 (1975). The Supreme Court typically remains the final arbiter of whether a claim presents a substantial federal question. New doctrinal developments must occur to indicate that the question has become substantial in order to revive the issue. *Hicks*, 422 U.S. at 344.

Defendants contend that Plaintiffs' complaint presents the same issue rejected in *Baker*: whether a constitutional right to same-sex marriage exists. The Court agrees. Defendants further argue that no sufficient doctrinal developments have occurred to render this issue a substantial federal question. The Court disagrees.

The Ninth Circuit directly considered this issue in *Latta*. *Latta*, *2. The court reviewed *United States v. Windsor*, ___ U.S. ___, 133 S. Ct. 2675 (2013), in which the Supreme Court addressed a challenge to the federal Defense of Marriage Act (DOMA). DOMA recognized opposite-sex marriages under federal law, but not same-sex marriages. This distinction violated the Fifth Amendment. *Windsor* explained that DOMA's "principal purpose and . . . necessary effect" served "to demean" legally married same-sex couples. *Windsor*, 133 S. Ct. at 2695. "[N]o legitimate purpose" behind DOMA could overcome such an injury to same-sex couples. *Windsor*, 133 S. Ct. at 2696.

The court in *Latta* also reviewed *Lawrence v. Texas*, 539 U.S. 558, 578-79 (2003), where the Supreme Court recognized a due process right to engage in intimate conduct with a same-sex partner. The court finally considered *Romer v. Evans*, 517 U.S. 620, 631-34 (1996), where the Supreme Court determined that a law that barred enactment of any statute or ordinance that would protect the civil rights of gays and lesbians violated equal protection.

The court concluded that these recent decisions of the Supreme Court had produced sufficient doctrinal developments to determine that same-sex marriage now presents a substantial federal question. *Latta*, \*3. Federal district courts in Arizona and Alaska permanently enjoined enforcement of same-sex marriage bans in those states after *Latta*. *See Connolly v. Jeanes*, 2014 WL 5320642 (D. Ariz. 2014), and *Hamby v. Parnell*, 2014 WL 5089399 (D. Alaska 2014). These decisions comport with the outcome of litigation of same-sex marriage bans in other federal courts in states in the Ninth Circuit. *See Perry v. Brown*, 725 F.3d 968, 970 (9th Cir. 2013) (dissolving stay of order that had enjoined California's marriage ban); *Geiger v. Kitzhaber*, 994 F. Supp. 2d 1128, 1147-48 (D. Or. 2014) (overturning Oregon's marriage ban). The legislatures in Hawaii and Washington passed laws to permit same-sex marriage. *See* Haw. Rev. Stat. § 572-1 and Wash. Rev. Code § 26.04.010(1). Montana now stands as the lone state in the Ninth Circuit to prohibit the marriage of same-sex couples and to prohibit the recognition of same-sex marriages that validly have taken place in other jurisdictions.

Defendants argue that *Latta* misinterprets these Supreme Court cases and arrives at the erroneous conclusion that *Baker* no longer serves as binding precedent. This Court has reviewed the analysis in *Latta* and agrees that *Baker* no longer precludes consideration of challenges to the constitutionality of laws that prohibit same-sex marriage. Nevertheless, even if the Court disagreed with the

analysis in *Latta*, that analysis represents "binding authority" that "must be followed unless and until overruled." *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001). The Court thus must consider Plaintiffs' equal protection challenge to the Montana laws that prohibit same-sex marriage.

## B. Constitutional Right to Equal Protection of the Laws

Plaintiffs contend that Montana laws and the Montana Constitution violate their right to equal protection of the laws by prohibiting same-sex marriage. The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

The Supreme Court has developed tiers of judicial scrutiny to evaluate whether a law violates an individual's right to equal protection of the laws. The first step involves a determination as to what classification the law makes. *Clark v. Jeter*, 486 U.S. 456, 461 (1988). The classification made in the law indicates what level of scrutiny the Court should apply when evaluating the law. *Jeter*, 486 U.S. at 461.

## 1. Form of Classification

Plaintiffs argue that Montana's laws that ban same-sex marriage discriminate on the basis of sexual orientation. Defendants contend that these

facially neutral laws apply with equal force to all persons. Defendants concede that the laws may have a disparate impact as applied to gays and lesbians.

Montana's laws that ban same-sex marriage distinguish on their face between opposite-sex couples and same-sex couples. Montana law permits opposite-sex couples to marry. Montana law similarly recognizes the out-of-state marriages of opposite-sex couples. Montana law bans same-sex couples from marrying. Montana law further prohibits the recognition of out-of-state marriages by same-sex couples.

The Ninth Circuit in *Latta* analyzed laws in Idaho and Nevada that imposed nearly identical prohibitions on same-sex marriages as the laws in Montana. *Latta* determined that these Idaho and Nevada laws discriminate on the basis of sexual orientation. *Latta*, *3. Montana's laws that ban same-sex marriage likewise discriminate on the basis of sexual orientation.

## 2. Level of Scrutiny

The Ninth Circuit applied heightened scrutiny in *Latta* to classifications based on sexual orientation. *Latta*, *4. Defendants contend that *Latta* misapplied Ninth Circuit precedent. Defendants filed a notice of supplemental authority in which they cited to the Sixth Circuit's recent decision in *DeBoer v. Snyder*, 2014 WL 5748990 (6th Cir. 2014). The court in *DeBoer* applied rational basis scrutiny in rejecting a challenge to bans on same-sex marriage in four states. *Latta*

9

represents binding Ninth Circuit precedent and provides the framework that this Court must follow. *Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 933 (9th Cir. 1981).

The Ninth Circuit previously had determined that rational basis review should apply to classifications based on sexual orientation. *High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). There a class of plaintiffs challenged the Department of Defense's policy of "refusing to grant security clearances to known or suspected gay applicants." *High Tech Gays*, 895 F.2d at 565. The court acknowledged that gays and lesbians had suffered a history of discrimination. The court nevertheless determined that gays and lesbians failed to meet the definition of a suspect class that would warrant application of heightened scrutiny. *High Tech Gays*, 895 F.2d at 573.

The Ninth Circuit recently revisited this issue in *SmithKline Beecham Corp. v. Abbott Labs.*, 740 F.3d 471, 480-84 (9th Cir. 2014). The court acknowledged that the Supreme Court in *Windsor* had failed to articulate the precise level of scrutiny that should apply to classifications based on sexual orientation. *SmithKline*, 740 F.3d at 480. The court determined that the Supreme Court, in fact, had applied heightened scrutiny in analyzing DOMA. *SmithKline*, 740 F.3d at 483. The court reasoned that *Windsor* now required it "to apply heightened scrutiny to classifications based on sexual orientation for purposes of equal protection." *SmithKline*, 740 F.3d at 484.

The court in *Geiger* hesitated to apply the heightened scrutiny standard demanded in *SmithKline* in evaluating Oregon's ban on same-sex marriage. The court noted that the panel's decision in *SmithKline* was "not yet a truly final and binding decision" based upon the fact that the mandate had not issued. *Geiger*, 994 F. Supp. 2d at 1141. The court nonetheless proceeded to strike down Oregon's same-sex marriage ban under rational basis review. *Geiger*, 994 F. Supp. 2d at 1147-48. The Court faces no similar quandary here as the mandate has issued in *SmithKline*. *See SmithKline Beecham Corp. v. Abbott Labs.*, 759 F.3d 990 (9th Cir. 2014) (denying rehearing en banc).

Defendants suggest that the Ninth Circuit misinterpreted *Windsor* in *SmithKline*. Defendants argue that the rational basis review required under *High Tech Gays* represents the appropriate level of scrutiny. Defendants maintain that *Latta* should have applied rational basis review pursuant to *High Tech Gays* rather than heightened scrutiny required under *SmithKline*. The decision in *Latta* to apply heightened scrutiny to classifications based on sexual orientation, as developed in *SmithKline*, represents binding precedent. *Hart*, 266 F.3d at 1170. This Court must evaluate Montana's ban on same-sex marriage using the heightened scrutiny analysis.

The discriminatory means employed by a law must relate substantially to the achievement of important governmental objectives in order to survive heightened

scrutiny. *United States v. Virginia*, 518 U.S. 515, 533 (1996). This Court must examine the actual purpose of the law. *SmithKline*, 740 F.3d at 483. The Court also must consider carefully any inequality that may result from the law. *SmithKline*, 740 F.3d at 483.

**3. Asserted Justifications**

Defendants argue that the laws that ban same-sex marriage in Montana should survive rational basis review. As discussed above, however, heightened scrutiny represents the appropriate level of review for classifications based on sexual orientation. *Latta*, *4. Defendants fail to put forth any persuasive argument that the discriminatory means employed by these laws relate substantially to the achievement of any important governmental objectives.

*Latta* considered several arguments in support of the bans on same-sex marriage in Idaho and Nevada. The defendants in *Latta* argued that the laws help ensure that parents of different genders raise children. The court reasoned that the defendants really argued that same-sex couples do not make suitable parents. *Latta*, *8. The court noted that both Nevada and Idaho already allowed adoption by gays and lesbians. *Latta*, *8. The court determined that to allow same-sex couples to adopt children and then to "label their families as second-class" is "cruel as well as unconstitutional." *Latta*, *9.

In a concurring opinion, Judge Berzon considered the defendants' argument that parents of different genders should raise children. Judge Berzon dismissed this justification as being laden with the "baggage of sexual stereotypes" that the Supreme Court repeatedly has rejected. *Latta*, *24 (Berzon, J, concurring). Judge Berzon noted that the Supreme Court has struck down laws that make generalizations about "the way women are" or "the way men are" as justifications for the legislation. *Latta*, *24 (Berzon, J, concurring).

The defendants also argued that permitting same-sex marriage will encourage opposite-sex couples to opt-out of marriage. The defendants argued that a father who sees a child being raised by two women will decide that it is unnecessary for his children to have a father. The court disparaged this proposition as a "crass and callous view of parental love." *Latta*, *5.

An expert presented data from Massachusetts, where same-sex marriage has been permitted since 2004. No decrease in marriage rates or increase in divorce rates have occurred in the past decade. *Latta*, *5. This outcome follows the conclusion of other courts that "permitting same sex couples to marry will not affect the number of opposite-sex couples who marry, divorce, cohabit, have children outside of marriage or otherwise affect the stability of opposite-sex marriages." *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 972 (N.D. Cal. 2010).

The defendants in *Latta* next argued that the bans on same-sex marriage further the stability of family structures by targeting benefits at couples who possess biological procreative capacity. The court noted that "to say that marriage is simply about the capacity to procreate" demeans married couples, especially those who are childless. *Latta*, *7. The laws banning same-sex marriage also are "grossly over- and under-inclusive" of the purported goal of targeting benefits at families who may have children. *Latta*, *7. Opposite sex couples who lack reproductive capacity, or choose not to have children, are allowed to marry, but same-sex couples who already have children are not allowed to marry. *Latta*, *7.

The court concluded that laws that prevent same-sex couples with children from marrying "materially harm and demean same-sex couples *and* their children." *Latta*, *8 (emphasis added). As the Court recognized in *Windsor*, prohibiting same-sex couples from joining in marriage "humiliates" children being raised by same-sex couples and makes it even more difficult for those children "to understand the integrity and closeness of their own family and its concord with other families in their community and in their daily lives." *Windsor*, 133 S. Ct. at 2694.

*Latta* considered several other purported justifications for banning same-sex marriage. The court summarily rejected these justifications as being "unpersuasive." *Latta*, *9. Defendants have put forth no persuasive arguments that the laws that ban same-sex marriage in Montana relate substantially to the

14

achievement of an important governmental objective. Defendants have failed to meet their burden under heightened scrutiny to justify the discrimination engendered by the Montana laws that ban same-sex marriage.

Plaintiffs who challenge these Montana laws that ban same-sex marriage come from diverse points across Montana. They hale from communities large and small – Butte, Great Falls, Helena, Bozeman, Billings, Charlo, and Philipsburg. Plaintiffs come from families that have lived in Montana for generations and from recently arrived families. They represent different walks of life that range from public employees, to military veterans, to retail managers, to marketers, to health care workers. They spend their free time engaged in activities that thousands of Montana families enjoy. These couples recreate in the beautiful outdoors that Montana offers. They cheer for their favorite teams at local sporting events. They practice their faiths freely as guaranteed by our Constitution.

And like many families in Montana, some of these same-sex couples raise children. Some of these children come to the families from previous relationships with opposite-sex partners. Others arrive to the families through the gift of adoption. Montana law allows, however, only one person from a same-sex couple to serve as the adoptive parent. *See* Mont. Code Ann. § 42-1-106; *Kulstad v. Maniaci*, 220 P.3d 595 (Mont. 2009). The available social science indicates that the children raised by these same-sex couples will "fare just as well as their peers

physically, psychologically, emotionally, cognitively, and socially." *Kulstad*, 220 P.3d at 601; *see also Perry*, 704 F. Supp. 2d at 980-81 and *DeBoer v. Snyder*, 973 F. Supp. 2d 757 (E.D. Mich. 2014), *rev'd on other grounds*, 2014 WL 5748990 (6th Cir. 2014) (recognizing that the overwhelming scientific consensus demonstrates "no differences" in outcomes for children raised in opposite-sex households and children raised in same-sex households).

These families want for their children what all families in Montana want. They want to provide a safe and loving home in which their children have the chance to explore the world in which they live. They want their children to have the chance to discover their place in this world. And they want their children to have the chance to fulfill their highest dreams. These families, like all of us, want their children to adventure into the world without fear of violence; to achieve all that their talent and perseverance allows without fear of discrimination; and to love themselves so that they can love others. No family wants to deprive its precious children of the chance to marry the loves of their lives. Montana no longer can deprive Plaintiffs and other same-sex couples of the chance to marry their loves.

This Court recognizes that not everyone will celebrate this outcome. This decision overturns a Montana Constitutional amendment approved by the voters of Montana. Yet the United States Constitution exists to protect disfavored minorities from the will of the majority. Equal protection of the laws will not be achieved

through "indiscriminate imposition of inequalities." *Romer*, 517 U.S. at 633. Our constitutional tradition does not permit laws to single out a certain class of citizens for "disfavored legal status." *Romer*, 517 U.S. at 633.

Montana's laws that ban same-sex marriage impose a "disfavored legal status" on same-sex couples. The time has come for Montana to follow all the other states within the Ninth Circuit and recognize that laws that ban same-sex marriage violate the constitutional right of same-sex couples to equal protection of the laws. Today Montana becomes the thirty-fourth state to permit same-sex marriage.

## ORDER

The Court **GRANTS** Plaintiffs' Motion for Summary Judgment. (Doc. 35).

The Court hereby **DECLARES** that Montana's laws that ban same-sex marriage, including Article XIII, section 7 of the Montana Constitution, and Montana Code Annotated section 40-1-103 and section 40-1-401, violate Plaintiffs' rights to equal protection of the laws as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

The Court **PERMANENTLY ENJOINS** the State of Montana and its officers, employees, agents, and political subdivisions from enforcing Article XIII, section 7 of the Montana Constitution, Montana Code Annotated section 40-1-103 and section 40-1-401, and any other laws or regulations, to the extent that they

prohibit otherwise qualified same-sex couples from marrying in Montana, and to the extent that they do not recognize same-sex marriages validly contracted outside Montana. This injunction shall take effect immediately.

DATED this 19th day of November, 2014.

_____
Brian Morris
United States District Court Judge